# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 18–cv–00689–RM–KMT

JEANINE KOKOT, a Colorado resident,

    Plaintiff,

v.

MAXIM HEALTHCARE SERVICES, INC., a foreign corporation,

    Defendant.

---

# ORDER

---

This matter is before the Court on the August 15, 2019, recommendation of United States Magistrate Judge Kathleen M. Tafoya (ECF No. 150) to grant Plaintiff's motion for discovery sanctions (ECF No. 126) and enter default judgment against Defendant. The magistrate judge also recommended denying as moot Defendant's motion to dismiss (ECF No. 89) and Plaintiff's motion to compel (ECF No. 92). Defendant has filed an objection to the recommendation (ECF No. 156), Plaintiff has filed a response (ECF No. 167), and Defendant has filed a reply (ECF No. 173). For the reasons below, the Court overrules the objection, accepts and adopts the recommendation, grants Plaintiff's motion for sanctions, and enters default judgment against Defendant. The recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

**I.    LEGAL STANDARDS**

Pursuant to Fed. R. Civ. P. 72(b)(3), this Court reviews de novo any part of the magistrate judge's recommendation that is properly objected to. An objection is proper only if it

is sufficiently specific "to focus the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). "In the absence of a timely objection, the district may review a magistrate's report under any standard it deems appropriate." *Summers v. State of Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991).

A district court may issue default judgment as a sanction if a party fails to obey an order or to provide or permit discovery. Fed. R. Civ. P. 37(b)(2)(A)(vi). To determine if such a severe sanction is warranted, courts consider the factors set forth in *Ehrenhaus v. Reynolds*: (1) the degree of actual prejudice to the party seeking discovery; (2) the amount of interference with the judicial process; (3) the culpability of the resisting party, (4) whether the court warned the resisting party in advance that dismissal of the action or default judgment would be a likely sanction, and (5) the efficacy of lesser sanctions. 965 F.2d 916, 921 (10th Cir. 1992); *see also Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159 (10th Cir. 2013). Default judgment is generally considered a harsh sanction that should be used only when a party's noncompliance is due to willfulness, bad faith, or any fault of the disobedient party, not when a party is unable to comply with a discovery order; however, no wrongful intent need be shown. *Klein-Becker USA*, 711 F.3d at 1159.

## II.    BACKGROUND

Plaintiff worked for Defendant as an administrative officer and was in charge of its Colorado Springs facility. After a twenty-two-year employment history, she was terminated in March 2017, the same month Defendant received an unfavorable audit from Centers of Medicare and Medicaid Services. Part of Plaintiff's theory of the case is that Defendant terminated her in an effort to appease and improve its image with regulators. While employed, Plaintiff earned

units under Defendant's Incentive Investment Plan ("IIP").  In April 2017, Defendant informed Plaintiff that pursuant to the terms of the IIP she would receive an initial payment for twenty percent of her units followed by another payment in September 2019 for the remaining units.  The total value of the units was about $700,000.  However, in May 2017 Defendant informed Plaintiff that she was ineligible to receive any payment because she was terminated for cause.

Plaintiff filed this lawsuit in March 2018.  In her third amended complaint, she asserts claims for breach of contract, unjust enrichment, statutory violations under Maryland and Colorado law, and sex and age discrimination.  Discovery was drawn out and contentious.  The magistrate judge held two informal discovery conferences and extended the discovery deadline five times.  Plaintiff amended her complaint three times.  Defendant filed motions to dismiss each version of the complaint as well as more than twenty supplemental discovery responses.

In June 2019, Plaintiff moved for sanctions "based on Defendant's repeated failure to timely disclose information and fully supplement discovery responses."  (ECF No. 126 at 1.)  Specifically, Plaintiff argued that after identifying only one witness in its initial disclosures—Plaintiff's former supervisor, who played no role in the decision not to pay her for her IIP units—Defendant did not identify until May 2019 four additional witnesses who would testify on the decision not to pay Plaintiff for her IIP units and other topics relevant to her case.  Plaintiff also argued that Defendant's written discovery responses were habitually incomplete, specifically with respect to its failure to identify civil and criminal charges that had been made against Defendant in the preceding ten years by a state or federal governmental agency and which resulted in Defendant paying a fine or penalty, which the magistrate judge directly addressed in a February 2019 order.  (*See* ECF No. 88.)  Plaintiff further contended that Defendant did not provide sufficient information about Plaintiff's comparators—other

administrative officers who received unfavorable audits but nonetheless received payment for their IIP units.  Moreover, Plaintiff contended that it was not until April 2019 that Defendant first disclosed a critical e-mail from its CEO directing that Plaintiff not be paid for her IIP units.  Two months later, Defendant supplemented its response by including other e-mails in the string with the CEO's e-mail, but Plaintiff contended that Defendant still did not disclose the entire e-mail string.  Plaintiff sought sanctions of excluding the four witnesses disclosed in June as well as attorney fees and costs, but she did not request default judgment in her motion.

In response to Plaintiff's motion, Defendant argued that it had diligently produced documents responsive to Plaintiff's "burdensome, irrelevant, and duplicative discovery requests."  (ECF No. 135 at 13.)  It argued that its supplemental responses showed its exhaustive attempts to complete discovery fully and that it was not acting in bad faith.  Defendant also argued that Plaintiff was responsible for part of the delay because it took her 174 days to respond to Defendant's second set of interrogatories.  Defendant argued further that sanctions were not appropriate because there were no allegations of spoliation or destruction of evidence and because Plaintiff could not show she was prejudiced or surprised by the discovery process.  And Defendant argued that Plaintiff was to blame for her high discovery costs and that her request for all her costs was unjustifiable because none of those costs were apportioned to Defendant's alleged delay.

In her reply, Plaintiff contended that Defendant still had not complied with the Court's February 2018 discovery order.  After conducting additional research, she had learned that Defendant had been fined numerous times by various federal and state agencies but still had not disclosed such fines, thereby directly violating the Court's order directing that such information be disclosed.  Plaintiff cited eighteen such instances that were not disclosed.  She argued that the

sanctions originally requested would not provide a complete remedy and that default judgment should be entered.

The magistrate judge held a hearing on the motion for sanctions in August 2019. There, Defendant presented oral argument as to why it did not believe default judgment was warranted. The magistrate judge issued the recommendation about a week later. Applying the *Ehrenhaus* factors, the magistrate judge determined Defendant had engaged in sanctionable conduct in three areas. First, the magistrate judge found Defendant had concealed the "smoking gun" in the case—e-mails indicating that its CEO had intervened to prevent Plaintiff from being paid for her units. (ECF No. 150 at 20.) The magistrate judge found Plaintiff was prejudiced by the late disclosure of the e-mails because she was not able to depose the CEO. The magistrate further determined that the level of interference with the judicial process was manifest and that Defendant was culpable because it withheld relevant information from its own attorneys. And the magistrate judge determined no lesser sanction would deter Defendant from engaging in similar conduct.

Second, the magistrate determined Defendant's failure to provide information about fines and penalties levied against it amounted to "open defiance" of the February 2019 discovery order. (*Id.* at 24.) The magistrate judge found Plaintiff was prejudiced by the lack of disclosure because it prevented her from developing necessary comparator evidence with respect to other instances of either criminal negligence or gross incompetence at Defendant's facilities. The magistrate judge determined Defendant's behavior substantially interfered with the judicial process and that it was "fully and totally culpable for not providing information that it almost surely has at its virtual fingertips." (*Id.* at 25.) And again, the magistrate determined no lesser sanction would suffice because it would still be cost effective for Defendant to defy the system.

Third, the magistrate judge faulted Defendant for its last-minute disclosure of four witnesses it planned to call. The magistrate judge determined Plaintiff was prejudiced by Defendant's "unwarranted gamesmanship" and that Defendant was culpable for purposefully hindering Plaintiff's ability to prepare her case. (*Id.* at 27.) Defendant's conduct negatively interfered with the judicial process, the magistrate judge found, and the court's previous leniency during discovery conferences had prompted further disrespect for the Court, Plaintiff, and the discovery process.

The one *Ehrenhaus* factor that appeared to weigh in Defendant's favor was the lack of an explicit warning that default judgment could be levied against it as a sanction. But the magistrate judge noted that she repeatedly warned Defendant that it was not responding reasonably to discovery requests. The magistrate judge also noted that the lack of such a warning did not outweigh the other *Ehrenhaus* factors under the circumstances of the case.

In its objection to the recommendation, Defendant argues that it was deprived of due process because the magistrate judge did not warn it that she was considering terminating sanctions and did not give Defendant the opportunity to respond in writing to Plaintiff's request for such sanctions, which was first made in her reply brief. Defendant also argues that terminating sanctions are not warranted under the circumstances of this case based on the other *Ehrenhaus* factors. Neither party objected to the magistrate judge's recommendation to deny as moot Defendant's motion to dismiss and Plaintiff's motion to compel.

### III. ANALYSIS

#### A. Due Process

The hallmarks of due process are notice and an opportunity to respond. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Because Defendant was provided with

both, its due process arguments lack merit. Although Plaintiff first requested default judgment in her reply brief (after learning Defendant's conduct was more egregious than she previously thought), Defendant was on notice that the magistrate judge was considering default judgment at the August 2019 hearing, where it availed itself of the opportunity to be heard on the issue. Defendant cites no authority for the proposition that due process requires a party facing the sanction of default judgment to have the opportunity to respond *in writing*. *See id.* ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."). Such a requirement would make little sense in a case like this, where Defendant already responded in writing to Plaintiff's motion for significant sanctions and then responded orally at the hearing on the motion to the argument that default judgment should be considered. Defendant has not identified any arguments that it would have raised in writing if it knew it might be facing default judgment as opposed to merely having to pay over $100,000 in attorney fees and having four of its witnesses excluded as sanctions for its conduct during discovery. Further, because this matter was referred to a magistrate judge, Defendant has now twice availed itself of the opportunity to respond in writing to the recommendation, both in its objection to the recommendation (ECF No. 156) and in its reply (ECF No. 173). Accordingly, Defendant received notice that default judgment was a possibility in this case as well as opportunities to respond orally and in writing. Under the circumstances of this case, the Court discerns no due process violation.

The fact that terminating sanctions are often imposed only after multiple warnings and the opportunity to respond in writing does not convert these into requirements. There is no suggestion that counsel for Defendant was not aware the Court has the authority to impose such a sanction. Defendant was warned before the hearing, when Plaintiff explained in her reply why

she was requesting default judgment. And again, at the hearing, Defendant responded by arguing why it did not agree that default judgment was warranted. At that time, Defendant did not raise any due process concerns. Nor did it argue, as it does in its objection to the recommendation, that Plaintiff "forfeited any argument for terminating sanctions by failing to raise it until her reply brief." (ECF No. 156 at 9.) But this argument also lacks merit. Defendant cites no authority for the proposition that a court's authority to sanction parties for discovery abuse is circumscribed by the relief requested in a party's initial motion for sanctions. The Court concludes the magistrate judge's recommendation to enter default judgment in this case does not offend due process.

### B. *Ehrenhaus* Factors

Defendant next argues that the magistrate judge erred in applying the *Ehrenhaus* factors and "in her characterization of the facts." (ECF No. 156 at 10.)

#### 1. Prejudice

Defendant argues that the magistrate judge erred by concluding Plaintiff was prejudiced by its production of the CEO e-mails in April and June of 2019. Plaintiff spent over a year trying to uncover why Defendant decided not to pay her for her IIP units after initially indicating that it would do so. By the time Defendant disclosed the highly relevant information in these e-mails, it was too late for Plaintiff to depose the CEO. Regardless of whether these e-mails were overlooked or purposefully concealed, the prejudice to Plaintiff was the same—she was denied crucial evidence that would have helped her develop her case. Defendant's suggestion that the discovery deadline be extended a sixth time would further prejudice Plaintiff by causing even more delay and it would not undo Plaintiff's expenditure of time and money trying develop her case that was less efficient than it could have been because she was being kept in the dark about

how Defendant made its decision.

Defendant also argues that the magistrate judge erred by concluding Plaintiff was prejudiced by its failure to identify civil penalties and fines it was required to pay. Defendant concedes it "missed certain instances of civil fines and employee criminal charges" (ECF No. 156 at 14) but argues it did not willfully disobey the February 2019 discovery order. Defendant also contends Plaintiff "must share in the blame" (*id.* at 15) for its good faith mistake because her discovery requests were vague and overbroad. However, the February 2019 order clarified what Defendant was required to produce. Still, Plaintiff continued to find instances of fines and penalties after June 2019, when she filed her motion for sanctions. This information, which should have been easier for Defendant to produce than for Plaintiff to discover through her own research, was crucial to Plaintiff's case, as she needed to show that her comparators were treated differently than she was for comparable conduct. But at the August 2019 hearing, Defendant was asked about fines by the State of Texas and responded that it was "still looking at what these are." (ECF No. 154 at 10.) And this was after Defendant admitted that it overlooked a $14 million fine by the State of Massachusetts and claimed that was the only instance it had not disclosed. (*Id.* at 24.)

Defendant argues the magistrate judge erred by concluding that its late disclosure of four witnesses prejudiced Plaintiff because it could only have been "for purposes of disadvantaging Plaintiff and influencing the way in which she prepared her case for trial." (ECF No. 150 at 27.) But the fact that Defendant had identified these individuals as having some connection to the case is not the same as identifying them as witnesses for trial. *See Auraria Student Hous. at the Regency, LLC v. Campus Vill. Apartments, LLC*, 2014 WL 2933189, at *2 (D. Colo. June 30, 2014) (unpublished) ("[K]nowledge of the existence of a person is distinctly different from

9

knowledge that the person will be relied on as a fact witness."). Plaintiff spent over a year conducting discovery based on Defendant's disclosures and then, in the final week of discovery, Defendant disclosed four new witnesses it intended to call. At that point, it was too late for Plaintiff to depose these witnesses. Defendant offers no compelling reason why it could not have disclosed these individuals—as witnesses—earlier. Plaintiff was undoubtedly prejudiced by her inability to depose key players in the decision not to pay her for her IIP units. Defendant's conduct has clearly not only cost Plaintiff time and money but has deprived her of the ability to develop her case.

2. <u>Interference with the Judicial Process</u>

Defendant argues that the magistrate judge erred by finding it took a cavalier approach to discovery. But given the deficiencies discussed above, the Court agrees with the magistrate judge's determination that "[t]he level of interference with the judicial process is manifest." Moreover, in light of the magistrate judge's determination that the court "has no trust or confidence that all relevant information has been provided <u>even now</u>" (*id.* at 21), Defendant's contention that its missteps were due to inadvertence is unavailing. The discovery process requires parties to be diligent and thorough. Although Defendant "readily acknowledges its imperfections in the discovery process," this does not excuse its conduct in this case.

3. <u>Culpability</u>

Similarly, Defendant also argues the magistrate judge erred by attributing its imperfect discovery efforts to willfulness on its part rather than "human error." (ECF No. 156 at 18.) Defendant argues there is no evidence that it purposefully concealed the e-mails indicating its CEO's involvement in the decision to not pay Plaintiff for her IIP units. But the timing of the piecemeal disclosures in April and June of 2019 belies Defendant's argument that it conducted a

10

timely, diligent search for documents responsive to Plaintiff's discovery requests.  The fact that the e-mails were ultimately produced does not show they were never concealed.  Defendant points out that since the recommendation, it has engaged new lead counsel and continued to search for potentially responsive information.  But this is an example of doing too little and doing it too late.

    4.    <u>Advance Warning</u>

As discussed above in the due process section addressing due process, an explicit warning is not a prerequisite to a terminating sanction.  *See, e.g.*, *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1175 (10th Cir. 1995); *see also Ehrenhaus*, 965 F.2d at 922 ("A district court should ordinarily consider and address all of the above factors before imposing dismissal as a sanction.").  Here, the magistrate judge properly considered and addressed all the *Ehrenhaus* factors, and the case law supports the position that the failure to give an explicit warning about a terminating sanction is not dispositive.

    5.    <u>Lesser Sanctions</u>

Finally, Defendant argues that no sanction or a lesser sanction is warranted here.  But as the magistrate judge explained, in light of Defendant's conduct up to this point, extending the discovery deadline yet again, awarding monetary sanctions, and excluding Defendant's witnesses were not reasonably likely to cure the prejudice Defendant has caused.  Even if all of these lesser sanctions were imposed, Defendant might prevail in the case and still come out ahead financially.  Thus, the Court agrees with the magistrate judge's assessment that lesser sanctions would not be effective under the circumstances of this case.

## IV. CONCLUSION

Therefore, the Court OVERRULES the objection (ECF Nos. 156), ACCEPTS and

ADOPTS the recommendation (ECF No. 150), GRANTS Plaintiff's motion for sanctions (ECF No. 126), and DENIES AS MOOT Defendant's motion to dismiss (ECF No. 89) and Plaintiff's motion to compel (ECF No. 92). The Clerk is directed to enter DEFAULT JUDGMENT against Defendant per the terms of the recommendation.

DATED this 31st day of March, 2020.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge